## COWELL v. GREGORY.

(Filed March 18, 1902.)

APPEAL—*Waiver*—*Payment of Judgment*—*The Code, Sec. 886*—
   *Justice of the Peace.*

   A defendant by voluntarily paying a judgment taken against
     him before a justice of the peace waives his right of appeal.

DOUGLAS, J., dissenting.

ACTION by W. J. Cowell against N. P. Gregory, heard by
Judge *George H. Brown,* at September Term, 1901, of the
Superior Court of CAMDEN County.   From a judgment for
the plaintiff, the defendant appealed.

   *G. W. Ward,* for the plaintiff.
   *E. F. Aydlett,* and *P. H. Williams,* for the defendant.

MONTGOMERY, J.   At the time of the rendition of the
judgment in the Justice's Court, the defendant refused to
appeal, and paid the judgment voluntarily to the constable
and the recovery to the plaintiff in the action.   Within the
time allowed by law for appeals, the defendant filed the
proper notice of appeal to the Superior Court, and the ap-
peal was sent forward.   On the call of the case in the Supe-
rior Court, the plaintiff lodged a motion to dismiss the ap-
peal, upon the ground that the defendant had waived and
renounced his right to appeal, and had voluntarily paid the
judgment.
   The following were the facts as found by the Court: "The
Justice of the Peace heard the cause and rendered judgment
upon all the issues for plaintiff, in the sum of $32.63; that
at the time, and within an hour after judgment rendered and
announced, and in presence of the Justice, one Cartwright
said to defendant, 'Why don't you appeal,' and defendant

announced to the Justice that he did not wish to appeal, that he wished to pay the debt and get rid of it, and asked for the bill of costs; no execution was issued, and no request or demand made on the plaintiff to pay the judgment; that then and there the defendant paid the judgment and costs into the hands of the constable for the plaintiff, and the Justice satisfied and discharged the judgment at the request of the defendant.

His Honor dismissed the appeal, and upon his holding the defendant appealed to this Court. There was no error in the proceeding below.

The plaintiff cited the cases of *Suttle v. Green,* 78 N. C., 76, and *State v. Chastain,* 104 N. C., 900, but they have no application here. In those cases there were notices of appeal, a withdrawal of the same, and then renewals of the appeal. There was no payment or discharge in whole or in part of the judgment, voluntary or involuntary. In the present case, the judgment was not only paid, but the defendant expressed his purpose and desire to "pay the *debt* and get rid of it." The judgment had thereafter no existence for any purpose. 2 Cyc. Law and Pro., 647, 648.

Section 886 of The Code, from the view we have taken of the case, has reference only to cases where payments have been made involuntarily; as a payment made of a judgment to prevent execution from being issued with the attendant additional charges, costs and inconveniences.

No Error.

DOUGLAS, J., dissenting. I can not concur in the opinion of the Court, because, in my opinion, it is directly opposed to the provisions of The Code, as well as to the great weight of authority. But a single authority is cited by the Court as the basis of its opinion, and that is found, upon examination, to be directly to the contrary. In 2 Cyc. Law and Pro., 647, it is said "That voluntary payment or perform-

COWELL *v*. GREGORY.

ance of a judgment is generally held to be no bar to an appeal or writ of error for its reversal, unless such payment was made by way of compromise and agreement to settle the controversy, or unless the payment or performance of the judgment was under peculiar circumstances which amounted to a confession of its correctness."

There is no pretense that the defendant in any way confessed the correctness of the judgment, or that the money was paid by way of compromise.

It is true, 2 Cyc. Law and Pro., 648, further says: "There are, however, Courts which hold that such voluntary payment is a waiver of defendant's right of appeal," but the text of the work is against the position of the Court. I do not doubt that precedents can be found for almost any side of a question among the forty-five States of the Union, especially on questions of practice, which is largely governed by local statutes. The fact that only three States and one Territory hold that a voluntary payment is a waiver of the right of appeal, might well lead us to conclude that the weight of authority is to the contrary.

The rule is well stated in 2 Enc. Pl. and Prac., 181: "Payment of a collectible judgment rendered by a Court of competent jurisdiction is involuntary, and does not bar the appeal of the unsuccessful party below."

It is well known that our Code practice, although greatly changed, was originally modeled after that of New York, which holds, with the vast majority of States, that the payment of a collectible judgment is not voluntary in a legal sense. In *Peyser v. New York,* 70 N. Y., 497, 26 Am. Rep., 624, the principle is thus clearly stated: "Coercion by law is where a Court, having jurisdiction of the persons and the subject-matter, has rendered a judgment which is collectible in due course. There, the party cast in judgment may not resist the execution of it. His only remedy is to obtain a

reversal, if he may, for error in it.   As he can not resist the execution of it, when execution is attempted, he may as well pay the amount at one time as at another, and save the expense of delay." The Court says that the cases of *Suttle v. Green,* 78 N. C., 76, and *State v. Chastain,* 104 N. C., 900, have no application to the case at bar.   I must respectfully differ from the Court.   In my opinion, they apply by direct analogy.   I do not suppose it will be contended, in the face of Section 886 of The Code, that a mere payment of the judgment would have affected the defendant's right of appeal, had it not been for his casual expression that he wanted to "pay the debt and get rid of it."   What peculiar legal effect have these words beyond any others expressing a purpose not to appeal?   None that I know.   They are certainly no stronger than the actual withdrawal of an appeal already taken.

In *Suttle v. Green, supra,* this Court says: "On the trial before the Justice, the defendant denied that he owed the plaintiff anything.   And when the Justice gave judgment against him, he appealed in open Court.   This was all that he was obliged to do.   It then became the duty of the Justice, upon his fees being paid, to send the papers to the Clerk of the Court.   As an excuse for not sending up the papers, the Justice said that the defendant told him not to do it. Concede that this was a sufficient excuse for delay on the part of the Justice, still it did not estop the defendant.   He had *locus penitentiae,* and he did change his mind and filed with the Clerk a good bond to cover the plaintiff's claim and costs."

In *State v. Chastain, supra,* this Court says, on page 905: "E. H. Chastain first withdrew and then renewed and perfected his appeal.   He had a right to renew and reinstate it within the time prescribed by law, if he had no other object to attain but to delay the execution of his sentence."

These authorities might well be deemed conclusive; but let us examine the provisions of The Code regulating appeals

from a Justice of the Peace. Section 875 is as follows: "The party against whom judgment was rendered in any civil action in a Justice's Court, may appeal to the Superior Court from the same; but no appeal shall prevent the issuing of an execution on such judgment or work a stay thereof, except as herein provided." Section 882 provides that execution may be stayed upon giving the proper bond. Section 876 provides that "the appellant shall, within ten days after judgment, serve a notice of appeal, stating the grounds upon which the appeal is founded." * * * This term of ten days is clearly the *locus penitentiae* referred to in Suttle's case, within which the defendant may "change his mind." He did change his mind, and perfected his appeal strictly according to law. As intimated in Chastain's case, it made no difference what caused him to change his mind, if he exercised his right of appeal within the ten days allowed by the statute. This time is evidently given to enable the defendant to carefully consider the matter, and, if necessary, obtain legal advice. However, in the meantime execution may be taken out by the plaintiff, regardless of any right of appeal. It may be that the defendant is unable to give bond. If so, why should he wait for the issuing of an execution, with all its extra costs. It is true, he may recover what he has paid, but then again he may not, as the perils of litigation are almost equal to those of the sea, without the benefit of marine insurance. Section 886 of The Code provides that "if the judgment appealed from, or any part thereof, be paid or collected, and the judgment be afterwards reversed, the appellate Court shall order the amount paid or collected to be restored, with interest from the time of such payment or collection." The disjunctive use of the words "paid *or* collected," clearly shows that the statute intended to give to the defendant the privilege of paying before execution, without in any way interfering with his right of appeal.

It should be remembered that the right of appeal is expressly guaranteed by the Constitution, Article IV, section 27, and should not lightly be set aside by implication or presumption.    Indeed, so sacred is it regarded, that parties can not waive their right of appeal before trial, even by express agreement.    *Falkner v. Hunt,* 68 N. C., 475; *Runnion v. Ramsay,* 93 N. C., 410.    With all respect for the Court and submission to its decision, I can not concur in an opinion, which, in my deliberate judgment, flies in the face of authority and the teeth of the statute.